*508 OPINION OF THE COURT
Elaine Slobod, J.
By this CPLR article 78 proceeding the petitioners challenge the respondent’s determination to terminate their tenancy in Summitfield, a 100-unit State-subsidized housing complex.
Respondent’s motion for summary dismissal of this proceeding has in turn been met by petitioners’ cross application for summary relief in their favor, or in the alternative, for an order transferring this proceeding to the Appellate Division pursuant to CPLR 7804 (g).
The respondent elected to terminate petitioners’ tenancy by a notice dated August 7, 1997 directing their removal by October 31, 1997. This decision was based on the findings and conclusion of the Tenant Review Board which, following a hearing, upheld the determination of respondent’s Executive Director to terminate petitioners’ lease. The basis for respondent’s action was a finding that petitioners had violated the conditions of a stipulation dated August 14, 1996. By that stipulation a prior notice to vacate petitioners’ tenancy was revoked on condition that petitioner Dolson’s then 21-year-old son Miguel “remove himself from the project and on condition that he does not, at any time, appear on the grounds of any development owned by the Middletown Housing Authority”.
The fact that Miguel no longer occupies petitioners’ apartment is conceded by respondent. However, Alethea Dolson herself conceded at the August 6, 1997 hearing that, contrary to their agreement with respondent, Miguel has frequently been permitted by them to visit their apartment and that he has otherwise been frequenting the grounds of the Summitfield complex to visit friends.
Even if we disregarded the unsworn written hearsay offered by respondent at the August 6, 1997 hearing, the testimony of petitioner Alethea Dolson specifically acknowledged that Miguel “comes to see her but only for ten or fifteen minutes * * * [I] can’t close the door in [my] child’s face and tell him he can’t come to see [me] ***[!] can’t see telling [my] son to get out [and] that he is not allowed to visit [me] * * * He figures that no one is going to keep him from seeing his mom”. Thus no question of fact exists as to petitioners’ breach of the stipulation.
Initially, the court rejects the petitioners’ claims of due process violations with respect to the August 6, 1997 hearing, as it finds that petitioners were provided adequate notice and an opportunity to be heard.
*509 Contrary to respondent’s contention that petitioners are now time barred from questioning the 1996 stipulation (CPLR 217), it has been consistently held that the viability of the conditions imposed by such stipulation can be challenged on public policy grounds at the time of their breach* (see, Matter of Edwards v Christian, 61 AD2d 1045, affd for reasons stated at App Div 46 NY2d 964; Matter of Rodriguez v Blackburne, 193 AD2d 546).
Relevant case law is based on analogous, but a distinctively less broad New York City public housing regulation with respect to ineligibility. That regulation requires proof that an emancipated child, banned by an Authority, actually occupy a parent’s apartment to justify an eviction. The provisions in question in this proceeding, 9 NYCRR 1627-7.2, are much broader in scope. When the instant regulations address the serious problems of illegal drugs for purposes of establishing a family’s ineligibility, an Authority need only prove storage and/or sale or possession by any member of the family or any other person “permitted into the apartment or common areas of the building or onto the grounds of the project by a tenant * * * provided that the tenant * * * shall have the actual knowledge of or shall have permitted such guest or other person to engage in such unlawful possession [etc.]” (9 NYCRR 1627-7.2 [c] [1]).
Irrespective of the apparent scope of the above regulation, it has been definitely held that the culpability of an emancipated nonresident adult child may not be imputed to a parent-tenant (Matter of Edwards v Christian, supra, at 1046). The courts have reasoned that a condition imposing an absolute exclusion of the child from the entire project is unreasonable per se as it establishes an impossible burden on the parent (Matter of Rodriguez v Blackburne, supra, at 547). Therefore, to the extent that the stipulation in question imposed such a broad burden on petitioners, it is unenforceable and its breach may not form any part of the bases for respondent’s decision to terminate petitioners’ tenancy.
However, the remaining implicit condition, which clearly required petitioners to exclude Miguel from their apartment remained viable. Since this condition was admittedly and willfully violated by petitioners, only the question of the reasonableness of penalty imposed by respondent remains to be decided by the court (CPLR 7803 [3]).
*510 In this regard, this court categorically rejects petitioners’ argument that consideration be given to their desire to maintain their familial relationship with Miguel. This argument has no validity as it is outweighed by the rights of 99 other families to desire a community safe from the dangers posed by Miguel’s detrimental conduct. Therefore, respondent was justified, indeed obligated, under these circumstances to act decisively.
However, when we remove the effect of any vicarious liability which respondent might have assessed against petitioners based on the actions of Miguel, and compare petitioners’ conduct to that in cases where lease terminations have been upheld (see, e.g., Matter of Blanco v Popolizio, 190 AD2d 554 [drug sales from apartment]; Matter of Alvarez v Hernandez Piñero, 211 AD2d 466 [son’s repeated refusal to vacate apartment]), this court is constrained to modify respondent’s decision.
In light of the fact that petitioners did comply with the condition to have Miguel vacate the apartment; that they themselves have not been implicated in the alleged illegal conduct of Miguel; that some of Miguel’s visits to the apartment may have been related to his mother’s medical condition; and that petitioners have been residents of Summitfield for many years, the penalty of an unconditional termination of their tenancy was too disproportionate to the nature and degree of their breach to be sustained (see, Baldwin v New York City Hous. Auth., 65 AD2d 546).
Accordingly, the petition and related motions are disposed of as follows: the termination of petitioners’ lease is permanently stayed on condition that (a) unless petitioners have obtained in advance a written authorization from respondent based on good cause shown (such as a medical emergency), they absolutely prohibit Miguel from entering their apartment; and (b) they shall not otherwise affirmatively invite or encourage Miguel to enter any other area of the Summitfield apartment complex.
A single proven violation of either of the above conditions, after service upon petitioners or petitioners’ counsel of a copy hereof with notice of entry, shall automatically constitute justification for respondent to renew eviction proceedings.
Respondent is awarded costs on both motions in the total sum of $200 (CPLR 8202) which petitioners shall pay within 90 days.

 As distinct from the fact-findings upon which those conditions may have been premised.